**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**


BRENT ADRAIN SNIDER,

               Plaintiff,

v.                             CIVIL ACTION NO.  6:12-cv-00954

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.


**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Brent Adrain Snider's Complaint [ECF 2] seeking review of the final decision of the Commissioner of Social Security ("Commissioner").[1]  By standing order entered September 2, 2010, and filed in this case on April 4, 2012, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation for disposition ("PF&R").  On July 17, 2012, Plaintiff filed his motion for judgment on the pleadings [ECF 10], which was referred to Magistrate Judge Stanley.  Following Magistrate Judge Stanley's retirement, this case was referred to United States Magistrate Judge Dwane L. Tinsley for submission of a PF&R.  Magistrate Judge Tinsley entered his PF&R on August 6, 2013, which recommended that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket. (ECF 13.)

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, replacing the former Social Security Commissioner, Michael J. Astrue, the original Defendant in this case.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Colvin is automatically substituted as the Defendant.

For the reasons that follow, the Court **OVERRULES** Plaintiff's objection, **ADOPTS** the PF&R to the extent it is not inconsistent with this Opinion, **DENIES** Plaintiff's motion for judgment on the pleadings [ECF 10], and **AFFIRMS** the final decision of the Commissioner.

## I. PROCEDURAL BACKGROUND

The facts concerning this matter are more fully set forth in the PF&R. In short, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") in December 2009. Plaintiff claimed that his disability began on November 9, 2009, and resulted from injury to his right hand caused by a table saw. (ECF 9–7 at 13.) Plaintiff alleged that he had lost his middle finger and part of the thumb of his right hand. (*Id.*) He stated that the "flex tendons" in his hand were damaged and "will not work correctly." (*Id.*) Plaintiff claimed that he could not grasp with his right hand and lost the use of his index and ring fingers. (*Id.* at 19.) Plaintiff's claims were denied initially as well as upon reconsideration.

Upon Plaintiff's request, a hearing was held before Administrative Law Judge James P. Toschi ("ALJ") on May 11, 2011. In addition to Plaintiff's testimony, the ALJ heard the testimony of two impartial medical experts, Judith Brendemuehl, M.D. and Marshall Tessnear, Ph.D. Also, a vocational expert, Harry Tanzey, testified. (ECF 9–2 at 27–43.) The medical record evidence included records from Plaintiff's treating physician, William Wood, M.D., a plastic surgeon who operated on Plaintiff's right hand. These records memorialize Plaintiff's post-operative office visits with Dr. Wood and range from November 17, 2009, through January 5, 2010. (ECF 9–8 at 22–31.) The ALJ permitted Plaintiff's attorney thirty days in which to submit additional medical records reflecting Plaintiff's more recent office visits with Dr. Wood. (*Id.* at 32–33.)

Plaintiff failed to submit additional records from Dr. Wood within the time frame provided by the ALJ .   Thus, by decision dated June 28, 2011, the ALJ determined that Plaintiff was not entitled to benefits.   Using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the disability onset date December 8, 2009; (2) Plaintiff suffered from a severe impairment, namely, residuals of traumatic injury to his right hand and fingers; (3) Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments under the governing regulations; (4) Plaintiff was unable to perform his past relevant work as a warehouse stocker; and (5) Plaintiff had the residual functional capacity to perform light work, with certain stated conditions, limitations, and restrictions.   (ECF 9–2 at 14–20.)

Plaintiff requested review of the ALJ's decision by the Social Security Administration's Office of Disability Adjudication and Review ("Appeals Council").   In his request for review, Plaintiff tendered additional medical evidence that he had not provided to the ALJ.   This evidence consisted of additional medical reports and notes by Dr. Wood reflecting more recent office visits with Plaintiff.   These office visits ranged from February 2010 through April 2011.   Plaintiff also tendered a report prepared by an independent medical examiner, James M. Dauphin, M.D., an orthopedist.   Dr. Dauphin's report is dated August 10, 2011 and states that he examined Plaintiff on August 8, 2011.   (ECF 9–9 at 22.)   The Appeals Council considered this newly-submitted evidence and made it a part of the record.   (ECF 9–2. at 6.)   By order dated February 8, 2012, the Appeals Council denied Plaintiff's request for review (ECF 9–2 at 2–7).   Consequently, the ALJ's decision became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff sought judicial review by this Court on April 3, 2012.   On July 17, 2012, Plaintiff filed his motion for judgment on the pleadings [ECF 10] and Defendant filed a responsive brief (ECF 11).   Magistrate Judge Tinsley filed a PF&R, recommending that this Court deny the motion for judgment on the pleadings and affirm the final decision of the Commissioner.   (ECF 13.)

## II. STANDARD OF REVIEW

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order.   28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).   In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

## III. PLAINTIFF'S OBJECTION TO THE PF&R

Objections to the PF&R in this case were due on August 23, 2013.   Plaintiff filed a timely objection to the PF&R on August 13, 2013 (ECF 14).   He states that "[t]he new evidence submitted post-hearing warrants a change in the ALJ's decision and a remand pursuant to Sentence Six of 42 U.S.C. [§] 405(g)."   (*Id.*at 2.)   Plaintiff contends that the medical evidence the ALJ relied upon was "outdated" and that the new evidence he submitted to the Appeals Council "provides updated information that [Plaintiff's] condition did not improve."   (*Id.*)   Plaintiff

4

contends that Dr. Wood's August 24, 2010, office visit notes stating "Overall, the patient is doing well" and "[h]e has been weed-eating" fail to show that Plaintiff "did not continue to have pain and functional limitations." (*Id.*)  Plaintiff contends that the magistrate judge erred by relying on these medical notes to support his recommendation that the Court affirm the Commissioner's decision.  Plaintiff further contends that the magistrate judge's proposed finding that Dr. Dauphin's opinion "is not inconsistent with the existing medical evidence of record" is unsupported because "Dr. Dauphin specifically stated that [Plaintiff's] injuries were permanent while Dr. Brendemuehl testified that [Plaintiff] was expected to improve." (*Id.*)  Plaintiff states that the ALJ relied "on outdated evidence from early 2010." (*Id.*)  Plaintiff concludes that "[t]he ALJ's decision denying benefits is not supported by substantial evidence and contains reversible errors.  Accordingly, the decision must be reversed or remanded for further consideration." (*Id.* at 3.)

Defendant responded that Magistrate Judge Tinsley used the correct legal standard and correctly concluded that the new medical evidence "especially the treatment notes from William Wood, M.D., corroborates the [ALJ's] determination that Plaintiff could work as long as he had restricted use of his right hand." (ECF 15 at 2.)  Defendant further argues that Plaintiff's independent medical examiner, James Dauphin, M.D. "identified no specific functional restriction involving Plaintiff's right hand that contradicted Plaintiff performing the work defined" by the ALJ.  (*Id.* at 3.)

## *IV. DISCUSSION*

The Court will now review de novo those parts of the PF&R to which Plaintiff has made a proper objection.  Plaintiff argues that the Court should reject the proposed findings and

recommendation of the magistrate judge because the more recent medical records from Dr. Wood and the medical opinion of Dr. Dauphin—neither of which were presented to the ALJ but both of which were presented to the Appeals Council—warrant remand and reversal of the final decision of the Commissioner.[2]   For the reasons that follow, the Court **OVERRULES** Plaintiff's objection and **DENIES** his motion for judgment on the pleadings.

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied.   *See* 42 U.S.C. § 405(g).   A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).   Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence.   *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).   If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court defers to the commissioner's decision.   *Johnson*, 434 F.3d at 653.

Pursuant to the fourth sentence of § 405(g), the court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."   *Id.* Pursuant to the sixth sentence of § 405(g),

> [t]he court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing

---

[2]   Plaintiff does not specifically challenge any of the ALJ's factual findings, including his finding that Plaintiff has the residual functional capacity to perform light work with the stated restrictions.   Rather, his sole objection is that remand is warranted in light of the newly-submitted medical evidence.

that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

A.    *Plaintiff's request for a "sentence six" remand is properly construed as a "sentence four" remand*

At the outset, although Plaintiff expressly requests a remand pursuant to sentence six of 42 U.S.C. § 405(g), remand under the facts of this case is not possible under this provision. Sentence-six remands may be ordered in only two situations: (1) where the Commissioner requests a remand before answering the complaint, or (2) where new, material evidence is adduced that was for good cause not presented before the agency. *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (citing 42 U.S.C. § 405(g) (1988 ed. and Supp. III) (sentence six) and *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 and n.2 (1991); *cf. Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (citations altered)).   In a sentence six remand,

> the district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding.

*Melkonyan*, 501 U.S. at 98.

Thus, a sentence four remand and a sentence six remand have significant jurisdictional consequences.   After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.   Under sentence six, the reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.   *See Allen v. Chater*, 67 F.3d 293 (4th Cir.1995) (unpublished) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

7

Here, the Commissioner did not request a remand and Plaintiff presented his new medical evidence to the Appeals Council.   Thus, remand under sentence six is not available and Plaintiff's request for remand must be construed as a sentence four remand.

B.    *Review of the record as a whole demonstrates that substantial evidence supports the final decision of the Commissioner*

A claimant may present new evidence to the Appeals Council that had not been presented to the ALJ if certain conditions are met.   Pursuant to 20 C.F.R. § 404.970(b),

> [i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Evidence is new "if it is not duplicative or cumulative" and is material if there is "a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Secretary, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc), *superseded by statute on other grounds*, 20 C.F.R. § 404.1527.

Evidence that is new is neither duplicative nor cumulative. *Id.* "Evidence is material if there is a reasonable probability that it would have changed the outcome." *Id.* (citing *Borders v. Heckler*, 777 F.2d 954, 956) (4th Cir. 1985)).   Evidence relates to the period on or before the date of the ALJ's decision if it provides evidence of impairments at the time of the decision. *See Johnson v. Barnhart*, 434 F.3d at 655–56.   Where evidence is subject to more than one rational interpretation, a court must uphold an ALJ's findings if those findings are supported by inferences reasonably drawn from the record. *See* 42 U.S.C. § 405(g)

When confronted with new and material evidence, the Appeals Council must then evaluate the entire record including the new and material evidence.   *Meyer v. Astrue*, 662 F.3d 700,704–05 (4th Cir. 2011).   After this evaluation, if the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence currently of record, it must grant the request for review and either remand the case to the ALJ or issue its own decision on the merits.[3]   *Id*   "[I]f upon consideration of all of the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review."   *Id.*

Thus, in cases such as this, where a claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence and made it part of the record, this Court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings.   *Id.*; *see Wilkins v. Secretary, Dep't of Health and Human Servs.*, 953 F.2d at 95–96.

Here, following the ALJ's denial of disability benefits, Plaintiff requested review of that decision by the Appeals Council, as was his right pursuant to 20 C.F.R. § 404.967.   In its Notice of Appeals Council Action ("Notice") denying Plaintiff's request for review, the Appeals Council cited the appropriate governing standards and stated that it applied those rules.   (ECF 9–2 at 2.) Specifically, the Notice stated that it would review Plaintiff's case if it found that:   the ALJ

---

[3]   An Appeals Council may grant a claimant's request for review rather than deny or dismiss the request if:

    (1)     There appears to be an abuse of discretion by the ALJ;
    (2)     There is an error of law;
    (3)     The action, findings, or conclusions of the ALJ are not supported by substantial evidence; or
    (4)     There is a broad policy or procedural issue that may affect the general public interest.

20 C.F.R. § 404.970(a).

abused his discretion; made an error of law; the decision was not supported by substantial evidence; there was a broad policy or procedural issue that might affect the public interest; or the ALJ's decision is contrary to the weight of all the evidence now in the record.   (*Id.*.)   The Notice stated that the Appeals Council considered the newly-submitted medical evidence of Dr. Wood's more current office visit records and Dr. Dauphin's independent medical evaluation.   (*Id.* at 2, 5.) As such, the Appeals Council necessarily considered this evidence new and material, and that it related to the period on or before the date of the ALJ's decision.   Notwithstanding the new evidence, however, the Appeals Council advised Plaintiff that his newly-submitted medical evidence "does not provide a basis for changing the [ALJ's] decision."   (*Id*. at 3.)

The Appeals Council did not state the reasons why it found that Dr. Wood's and Dr. Dauphin's medical evidence did not provide a basis for changing the ALJ's decision.   It would have been helpful if they did, but as a general matter, the Appeals Council does not have to explain its reasons for denying review.   In *Meyer v. Astrue*, the Fourth Circuit held that the Appeals Council's failure to state its rationale for its decision to deny review is not error as long as the record provides 'an adequate explanation of [the Commissioner's] decision.' "   662 F.3d at 707. The Fourth Circuit observed that the lack of additional fact finding by the Appeals Council "does not render judicial review 'impossible' " *Id*.   (citation omitted).   The *Meyer* opinion noted that the Fourth Circuit has affirmed an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council where substantial evidence supported the ALJ's findings.   *Id*. (citing *Smith v. Chater*, 99 F.3d 635, 638–39 (4th Cir.1996)).   *Meyer* also noted that the Fourth Circuit has held that the ALJ's denial of benefits was "not supported by substantial evidence and reversed an ALJ's decision "when consideration of the record as a whole revealed that new evidence from a

10

treating physician was not controverted by other evidence in the record"   *Id.* (citing *Wilkins*,

953 F.2d at 96).

In the end, the *Meyer* court remanded the case to the Commissioner because the new

evidence was evidence from Meyer's treating physician, evidence afforded special weight under

20 C.F.R. § 404.1527(c). [4]   The treating physician's evidence, which had not been presented to

---

4   Section 404.1527(c) of Title 20 of the Code of Federal Regulations provides:

(c)   How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we
receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section,
we consider all of the following factors in deciding the weight we give to any medical opinion.

(1)   Examining relationship. Generally, we give more weight to the opinion of a source who has
examined you than to the opinion of a source who has not examined you.

(2)   Treatment relationship. Generally, we give more weight to opinions from your treating sources,
since these sources are likely to be the medical professionals most able to provide a detailed,
longitudinal picture of your medical impairment(s) and may bring a unique perspective to the
medical evidence that cannot be obtained from the objective medical findings alone or from reports
of individual examinations, such as consultative examinations or brief hospitalizations. If we find
that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is
well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in your case record, we will give it controlling
weight. When we do not give the treating source's opinion controlling weight, we apply the factors
listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3)
through (c)(6) of this section in determining the weight to give the opinion. We will always give
good reasons in our notice of determination or decision for the weight we give your treating source's
opinion.

(i)   Length of the treatment relationship and the frequency of examination. Generally, the
longer a treating source has treated you and the more times you have been seen by a
treating source, the more weight we will give to the source's medical opinion. When the
treating source has seen you a number of times and long enough to have obtained a
longitudinal picture of your impairment, we will give the source's opinion more weight
than we would give it if it were from a nontreating source.

(ii)   Nature and extent of the treatment relationship. Generally, the more knowledge a treating
source has about your impairment(s) the more weight we will give to the source's medical
opinion. We will look at the treatment the source has provided and at the kinds and extent
of examinations and testing the source has performed or ordered from specialists and
independent laboratories. For example, if your ophthalmologist notices that you have
complained of neck pain during your eye examinations, we will consider his or her opinion
with respect to your neck pain, but we will give it less weight than that of another physician
who has treated you for the neck pain. When the treating source has reasonable knowledge
of your impairment(s), we will give the source's opinion more weight than we would give it
if it were from a nontreating source.

the ALJ, corroborated an opinion that the ALJ rejected.   *Id.* at 703, 707.   Also, the new evidence conflicted with evidence that the ALJ credited.   The court stated "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder.   We cannot undertake it in the first instance.   Therefore, we must remand the case for further fact finding."   *Id.* at 707.

Appling the foregoing principles and having considered the record as a whole—including Plaintiff's newly-submitted medical evidence—the Court **FINDS** that the Appeals Council's denial of review of the ALJ's decision was not erroneous and the ALJ's decision—the final decision of the agency—was supported by substantial evidence.

1. *Dr. Wood's updated medical records*

To begin, the Appeals Council's determination that Dr. Wood's updated medical notes did not provide a basis for altering the ALJ's decision is fully supported by the record.   As noted *supra*, the record contains two sets of medical records relating to Dr. Wood's care of Plaintiff.

---

(3)    Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.

Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4)    Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5)    Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6)    Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

The first set includes Dr. Wood's notes and patient reports documenting Plaintiff's five initial office visits.   These records range from November 17, 2009 (shortly after Plaintiff's accident and surgery) through January 5, 2010.   This was the only set of records from Dr. Wood that were presented to the ALJ.   The second set of records contains notes and reports memorializing seven later office visits with Dr. Wood and range from February 2, 2010 through April 26, 2011.   These records were presented to the Appeals Council in Plaintiff's request for review of the ALJ's decision.

Although the medical records presented to the ALJ were not as recent as the records presented to the Appeals Council, Dr. Wood's observations concerning Plaintiff's right hand do not differ in any significant respect between the two sets.   If anything, the more recent records tend to further support the ALJ's denial of benefits.   For example, in the records reviewed by the ALJ, the January 5, 2010, office visit (which is the most recent office visit in that set of records) report states that the results of Dr. Wood's physical examination showed that Plaintiff's "small finger is uninjured", his "middle finger has a viable stump", his ring finger and index finger are improving", his thumb still has an eschar on the ulnar aspect of it." [5]   (ECF 9–8 at 22.)   In the section of the report titled "Assessment and Plan", Dr. Wood states:

> Overall, he is doing very well with his hand.   I went over these findings with the patient.   He thinks that he will not be able to do his job as a packer and I think the due date for that is 02/15/2009 [sic:, probably 2010].   I told him he should come back to see me in early 02/2010, at which time I can gave [sic] him a note saying that he is unable to do the work that he is supposed to be doing.    I get the impression that he was not likely to show up, but I think, because of the paperwork, he will show up once more.   The patient is to follow up as outlined above.

(*Id.*)

---

[5]   An "eschar" is a "thick, coagulated crust or slough which develops following a thermal burn or chemical or physical cauterization of the skin."  *Stedman's Medical Dictionary* 670 (28th ed. 2006).

Contained in the set of records presented to the Appeals Council, is a patient report dated April 26, 2011 (the most recent office visit report in this set of records).   Dr. Wood states: "The patient's thumb is doing well.   His ring and index finger have shown good stabilization and the patient actually has a pretty good hand.   He has good pinch strength.   He has some grip strength." (ECF 9–9 at 9.)   The reports for six earlier office visits are consistent with Dr. Wood's observations on April 26, 2011, and generally reflect a consistent track of improvement of Plaintiff's right hand function.   For example, for the February 2, 2010 office visit, Dr. Wood stated, "Overall, the patient is doing well.   His small finger and thumb are healing well.   The thumb has a small scab on it.   His middle finger is shortened and not causing problems.   His ring and index fingers are improved."   (*Id.* at 15.)   Dr. Wood noted, "He can do some things, but is not able to return to his job.   We gave him a work excuse stating he could only do left-handed work." (*Id.*)   Dr. Wood's notes for the March 16, 2010, office visit stated that Plaintiff experiences some phantom pains in his amputated middle finger, has "some grip strength," "is able to use his thumb to his index finger and ring finger pretty well," has a "fairly functional hand", although "[i]t may not be as strong as it used to be."   Dr. Wood's April 27, 2010, office report states, "The patient is no longer employed at his original work place.   He is seeking disability and I told him we support his efforts in that."   (Id. at 13.)   Dr. Wood continued,

> [o]n exam, the patient has a middle finger which is shortened.   His index and ring finger are flexed a little bit and he has limited function of those.   His thumb is working well, as is his small finger.   In summary, he has pretty good hand [sic]. The patient agrees with that . . . On exam, the hand has healed well.   I went over with the patient that he should continue to use his hand as much as he can and to follow up in 2 months or sooner if necessary.

(*Id.*)   For the August 24, 2010, office visit, Dr. Wood stated, "Overall, the patient is doing well. He has been weed eating.   He is using his hand some."   (Id. at 12.)   Similarly, for the October

14

26, 2010, office visit, Dr. Wood again noted, "Overall, the patient is doing well.   He still notes some cold intolerance.   He is able to pinch and grip but is becoming more and more left handed." (*Id*. at 11.)   In his report of the January 25, 2011, office visit, Dr. Wood stated "Overall, his thumb and small finger are doing well.   His middle finger is amputated and his index and ring finger have some function."   (*Id.*)   Plaintiff told Dr. Wood that he experiences intolerance to cold and "some clumsiness with the hand", but that Plaintiff is "satisfied that he can use his hand some." (*Id.* at 10.)   Contrary to Plaintiff's assertions, this evidence does not show that Plaintiff's "condition did not improve."   (ECF 14 at 2.)    Based on the foregoing evidence, the magistrate judge's proposed finding that the Commissioner's decision is supported by substantial evidence is not erroneous.

In making this determination, the Court has considered the Fourth Circuit's decision in *Meyer v. Astrue*.   As noted *supra*, the Fourth Circuit remanded the case to the Commissioner because, although Meyer presented evidence to the Appeals Council of Meyer's treating physician, Meyer had not presented this evidence to the ALJ.   *Meyer* is distinguishable because here, the ALJ had some of Dr. Wood's records, and the ALJ explicitly relied on these records when finding that Plaintiff was capable of performing light work with certain restrictions.   (ECF 9–2 at 16–17.)   The more recent records from Dr. Wood that were presented to the Appeals Council, as discussed *supra*, do not controvert the evidence from Dr. Wood that the ALJ considered or, for that matter, any other evidence in the record.   Moreover, the ALJ permitted Plaintiff to supplement the record with additional records from Dr. Wood, but Plaintiff, for unknown reasons, failed to provide any such records within the thirty-day grace period.   A fair inference for Plaintiff's failure

to supplement the record is that he likely realized the minimal probative value the additional records from Dr. Wood would have.

### 2.      Dr. Dauphin's independent medical examination

In addition to Dr. Wood's more recent office visit reports and notes, Plaintiff also tendered to the Appeals Council the independent medical evaluation of Dr. James M. Dauphin.   (ECF 9–9 at 21–25.)   Nothing about Dr. Dauphin's report provided a basis for the Appeals Council to change the ALJ's decision because, notwithstanding Dr. Dauphin's opinions, the ALJ's findings and conclusions are not contrary to the weight of the evidence in the record as a whole.   Plaintiff argues that the PF&R is in error because it states that Dr. Dauphin's opinion is not inconsistent with the medical evidence of record.   (ECF 14 at 2.)   Plaintiff contends that Dr. Dauphin opined that Plaintiff's injuries were permanent while Judith Brendemuehl, M.D. (one of the impartial medical expert witnesses who testified at the hearing before the ALJ) opined that Plaintiff was expected to improve.   (*Id.*)

Dr. Dauphin's opinion that Plaintiff's injuries are "permanent" is simply not inconsistent with Dr. Brendemuehl's opinion.   During her testimony, Dr. Brendemuehl tendered opinion evidence regarding Plaintiff's residual functional capacity.   (ECF 9–2 at 30–32.)   Dr. Brendemuehl made the point that the medical evidence regarding Plaintiff's functional capacity related to medical evaluations that occurred within a few months of Plaintiff's injury.   Dr. Brendemuehl essentially testified that, if anything, Plaintiff's functional capacity could only improve given that the medical evaluations were conducted close in time to the date of the accident.   This testimony is not inconsistent with Dr. Dauphin's opinion that Plaintiff's "impairments are permanent."   (ECF 9–9 at 24.)   Doubtless, Plaintiff's amputation of his middle

16

finger and scarring caused by the table saw accident caused "permanent" injuries and there is nothing in the record to suggest that the medical experts involved in this case would disagree on this point.   But this is not to say that Dr. Brendemuehl's opinion is inconsistent with Dr. Dauphin's opinion.

There are at least three other problems with Plaintiff's argument that Dr. Dauphin's opinion warrants reversal of the Commissioner's decision.   First, Dr. Dauphin was an examining physician, not a treating physician.   As such, Dr. Dauphin's opinion is not given as much weight under the regulations as the opinion of Dr. Wood, Plaintiff's treating physician.   To the extent that Dr. Dauphin's opinion conflicts with Dr. Wood's opinion, Dr. Wood's opinion would carry greater weight.   Another problem is that Dr. Dauphin's ultimate conclusion is that he is in *agreement* with the medical opinion of the consultative physician, Steven Nutter, M.D.   The ALJ took into consideration Dr. Nutter's findings and opinions and where Dr. Dauphin's opinion is not in conflict with Dr. Nutter's opinion, Dr. Dauphin's evidence is simply cumulative of evidence already in the record.   More particularly, following his examination of Plaintiff, Dr. Nutter's medical impression was "traumatic right hand injury and amputation and mild degenerative arthritis."   (ECF 9–8 at 36.)   Dr. Nutter's summary of his findings was as follows: "This 45 year old male claiming disability due to right hand.   As noted above, there is joint pain and decreased ROM.   There is no synovial thickening, periarticular swelling, nodules or contracture consistent with rheumatoid arthritis."   (*Id.*)   In Dr. Dauphin's concluding remarks, he opined, "I agree with Dr. Nutter that this man has traumatic amputation of the right hand with major impairment since he is right hand dominant.   He also has evidence of mild degenerative joint disease in the knees, which preclude him from kneeling, climbing or squatting.   All of these impairments are

permanent." (ECF 9–9 at 24.)  Finally, Dr. Dauphin offers no specific opinion on what part of the ALJ's residual functional capacity assessment was in error.  The ALJ determined that Plaintiff had the capacity to perform light work, as defined by the regulations.  (ECF 9–2 at 16.)  The ALJ specifically stated that Plaintiff should avoid "ladders, ropes, and scaffolds" and Plaintiff would be limited to "occasional handling, grip, gross manipulation and fingering or fine manipulation with his right hand." (*Id.*)  The ALJ further stated that Plaintiff should "avoid hazards such as heights and moving machinery." (*Id.*)  In light of this, the Court does not find that the magistrate judge's statement that Dr. Dauphin's opinion "is not inconsistent with the existing medical evidence of record" erroneous.

## IV.    CONCLUSION

In summary, the Appeals Council, after considering the evidence presented to the ALJ, as well as the evidence presented to the Appeals Council, did not err in finding that the updated records from Dr. Wood and the independent medical opinion of Dr. Dauphin did not provide a basis for changing the ALJ's decision.  The Appeals Council's decision was not erroneous because the evidence of record shows that the ALJ's action, findings, and conclusions are not contrary to the weight of the evidence.  Because the ALJ's decision to deny Plaintiff's disability claims was supported by substantial evidence and was reached by application of correct legal standards, the Court **OVERRULES** Plaintiff's objection, **ADOPTS** the PF&R to the extent it is consistent with this Opinion, **DENIES** Plaintiff's motion for judgment on the pleadings [ECF 10],

**AFFIRMS** the final decision of the Commissioner, **DISMISSES** this case, and **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 12, 2013

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE